2015-17 Wade G. Thompson v. Secretary of Veterans Affairs James Barney James Barney on behalf of the Appellant Mr. Thompson. Mr. Thompson served in the United States Marine Corps. During service he suffered a spinal injury that resulted in constant pain throughout the entire motion of his spine. At issue here is his request for an increased rating under 38 CFR 4.40 for additional functional loss due to pain. The Veterans Corps conceded that Section 4.40 must be considered in determining the proper rating for Mr. Thompson's spinal injury. And the court conceded that Mr. Thompson did in fact suffer functional loss due to pain. But because his pain was not severe enough to limit his forward flexion to 30 degrees or less, which is the threshold for the next higher rating in the general schedule, the court held that he was not entitled to that higher rating. Could you address the question I have? And that's whether Section 4.40 is a standalone basis for a rating. Whether it's a what, Your Honor? A standalone basis for a rating. It is, no, it must be considered in conjunction with the general rating schedule. Now, if your question is whether pain alone can be a basis for a rating, although the government disagrees, we argue that yes, it can be a basis for a rating provided that you meet the requirements of Section 4.40, which is that you have a report of pain that is corroborated with adequate pathology and that is corroborated by visible evidence of pain. If you meet those three requirements, then the pain can justify a rating. Well, that's your position. But the question, which is a very good one, is what is the relationship between 4.40 and the rest of the regs that set up the usual routine for giving disability percentages? The general rating schedule is based on an attempt to address the overall concept of functional loss. It mainly focuses on limitation of motion for the musculoskeletal system. But 4.40 was put in place because the VA recognized that limitation of motion is not the only basis for functional loss. And so, in cases where the pain is not considered as part of the general rating schedule, which is the situation for most of these musculoskeletal diseases, the VA is required to additionally consider Section 4.40 to see whether there is any additional basis for functional loss, such as pain, lack of endurance, lack of coordination, lack of speed. And that's the situation we have here. Mr. Thompson requested additional rating for functional loss. The court conceded that he did have, in fact, additional functional loss due to pain, but essentially created a litmus test that unless his functional loss due to pain resulted in one of the thresholds for limitation of motion in the general schedule, he wasn't going to be entitled to a higher rating. That's a misinterpretation of the statute. Section 4.40 does not require that functional limitation due to pain results in any limitation of motion. It says that functional loss, quote, may be due to pain supported by adequate pathology and evidenced by the visible behavior of the claimant undertaking the motion. So, the very definition of functional loss due to pain requires that the veteran be able to undertake the motion to demonstrate the pain. The VA's interpretation is the opposite. They say that the pain has to be such that the veteran cannot undertake the motion. The regulation also states that a body part that becomes painful, quote, on use must be considered seriously disabled. The phrase on use clearly means pain during use, not pain that prevents use, which is what the VA would argue. The regulation also says that weakness, which is another one of the bases for functional loss, is, quote, as important as limitation of motion, which again makes clear that limitation of motion is not the sole criterion upon which disability ratings should be based. The VA's interpretation of Section 4.40 would essentially rewrite that section to mean that pain and weakness and the other elements of functional loss are only important to the extent they limit the range of motion to one of the threshold amounts in the general schedule. In fact, the VA's interpretation would render Section 4.40 redundant with a general schedule. According to the Veterans Court, the only time a functional loss due to pain could warrant an increased rating is if it actually limited the veteran's range of motion to one of those threshold levels in the general schedule. But, of course, in that case, the veteran would already be entitled to that higher rating based on the range of motion analysis alone. There would never be a need to evaluate pain as part of a ratings decision, which is contrary to Section 4.40. As an example, if a veteran went in for a medical examination and complained of excruciating pain while bending forward, under the VA's interpretation, the physician could simply ignore it and say pain is not relevant. All that matters is the objective limit of your motion. Whether that limit is caused by pain or by a muscular problem or by a skeletal problem or because of nerve damage, it's not relevant under the VA's interpretation. All that matters is that objective limit, which is going to control the rating. That's not what Section 4.40 says. That, in fact, would render Section 4.40 redundant. And, of course, this Court and the Supreme Court have said that regulations and statutes should be construed as possible to avoid redundancy. Certainly, a veteran's regulation should not be interpreted in a way that makes it impossible for any veteran to actually take advantage of the very benefit that the regulation was intended to confer. Here, any reasonable interpretation of Section 4.40 makes clear that for the musculoskeletal diseases that a rating should not be based solely on range of motion. It must also take into consideration the other types of functional loss set out in Section 4.40, such as weakness, lack of endurance, lack of coordination, and painful motion. In essence, the VA's interpretation would eviscerate that entire pro-veteran-friendly regulation by creating this litmus test whereby all claims of functional loss would have to go through the wicket of limitation of motion. Now, the VA has raised three arguments in which the VA argues that the diagnostic codes for spinal injuries, which are applicable to Mr. Thompson here, already take pain into consideration because in the preamble of those diagnostic codes is the phrase, quote, with or without symptoms such as pain. Now, it's worth noting that the VA never raised that argument below, and I believe that was for good reason. Namely, the Veterans Court has already considered and rejected that specific argument in the Ballard v. Shinseki case, which we cited in our grave read. In Ballard, the Veterans Court held that Section 4.40 and the functional loss due to pain provisions must be considered in conjunction with ratings on spinal injuries just like every other type of muscular skeletal injury. And in fact, the court in Ballard, in a footnote, which we cited in our grave read, even pointed to multiple occasions where the Secretary for Veterans Affairs has conceded that very point in several litigations. The fact is, the phrase with or without pain, or with or without symptoms such as pain, means that pain is not a consideration in those ratings decisions. For instance, two veterans who have the same limited motion but very different pain profiles are going to receive the same rating under the general schedule. One could have excruciating pain during his range of motion, the other could have no pain at all. Under the rating schedule, in the diagnostic codes for spinal injuries, pain is not a consideration in that rating schedule. That's why the Veterans Court has consistently held that Section 4.40 and the functional loss due to pain provision must be considered in conjunction with spinal injuries just the same as other musculoskeletal injuries. And in fact, in this very case, both the board and the Veterans Court did consider Section 4.40 in conjunction with the rating decision of Mr. Thompson. When you look at Section 4.40, it instructs examiners to evaluate diagnostic codes in light of pain, weakness, or any other factors that might create a functional loss. Yes, Your Honor. So, doesn't that mean there's got to be a functional loss of some kind? It seems to me your argument is, there doesn't have to be any type of loss in range of motion if pain is enough. I mean, there can be 100% range of motion, but if in the exercise of that range there's pain, it seems to me you're saying that's entitlement to a rating. I think Section 4.40 makes that clear, that there are other types of functional loss other than range of motion. That's only one. You are depending entirely on 4.40. Your argument rests entirely on 4.40. For the request for the increased rating, yes. My only point was, when you asked me earlier, as the VA addresses injuries, it does consider both the general schedule and Section 4.40. The general schedule can give you a rating based on limitation of motion, which is what happened here. He has a 20% rating based on his 110 degree combined range of motion, but then you have to consult 4.40. And 4.40, and maybe I didn't address your question correctly before, but 4.40 is a stand-alone basis for increasing that rating based on other types of functional loss. Range of motion is only one type of functional loss. 4.40 lays out other types of functional loss, such as weakness, pain on motion, lack of coordination, and lack of normal speed. Any other answer than you gave the first time, from your viewpoint? And it's a different answer. I mean, this is what I was asking, and I think you're given a different answer right now. If it wasn't for 4.40, you wouldn't have a case. We wouldn't be here, correct? That's correct. And we're here, and you're saying that this particular regulation permits a disability just on the basis of pain. There doesn't have to be a functional loss of any kind. The pain is the functional loss. Section 4.40... Functional loss in terms of range of motion. No, no. Functional loss doesn't have to include range of motion. That's the whole point of Section 4.40. The last sentence says, a part that becomes painful on use must be considered seriously disabled. That means you can have functional loss due to pain without any limitation of motion. It's because the pain itself causes the functional loss. In fact, the evidence in this case... When you say the pain itself causes functional loss, then you're going back and you're relying on some type of limit in range of motion. No, no. What do you describe as functional loss? I'll give you an example. In Section, excuse me, page A, page 56 of the Joint Appendix, this is the 2008 evaluation that the Veterans Court primarily relied on in its decision, where he was diagnosed with degenerative joint disease. And not only was he diagnosed with degenerative joint disease, he was assessed as having pain. And then there's a list of all of the things that that affects in his daily life. Chores, it had a severe effect. Shopping, severe. Exercise, severe. Sports, prevent. Traveling, severe. Feeding, mild. Bathing, severe. Dressing, severe. Toileting, severe. Grooming, severe. And it even goes on to say that his wife will have to help him with bathing and dressing occasionally. These are functional effects, not due solely to range of motion. His range of motion was only 60 degrees. Primarily, these severe effects are caused by his pain. And that's the whole point of Section 4.40. The Veterans Court never even looked at that evidence because the Veterans Court created an artificial wicket where it said, we're only going to look at range of motion. But that's only one of five different types of functional loss that are spelled out in Section 4.40. That's where the error here is. The court erroneously limited Section 4.40 to just one type of functional loss. And that was the range of motion loss. There's four other types there. And we believe the evidence supports Mr. Thompson's request for increased rating. And in fact, one of the arguments that the VA has made here is that the court should follow the so-called Fenderson standard. Fenderson was a decision from the lower court. But even in Fenderson, there was no evidence of any loss of the range of motion. The only evidence was that Fenderson had foot pain. And the foot pain prevented him from engaging in certain daily activities such as playing sports and standing in place for a prolonged period of time. Here we have that same sort of evidence. Fenderson didn't depend or didn't show any loss of range of motion. And yet that was still considered to be a functional loss due to pain. I would like to reserve the remainder of my time. Okay. Thank you, Mr. Browning. Mr. Grimaldi. Good afternoon, Your Honors. May it please the Court. Based upon the reply brief of Mr. Thompson, the argument we've heard today, we do believe that Mr. Thompson is creating a more narrow, restrictive definition, excuse me, holding from the Veterans Court that the Veterans Court simply did not make. Basically, Mr. Thompson is arguing that the Veterans Court created a rigid, unforgiving test that's impossible for veterans to benefit. This is not the holding of the Veterans Court. The holding of the Veterans Court is much more narrow than this. And all we have to do is look at page 13 of the Joint Appendix to see this holding. Specifically, the Court says, the Court's finding here is simply that the Board did not err in finding that an additional functional loss due to pain is not compensable above and beyond the disability rating already assigned. And that's, again, JA 13. But the key to that language is additional functional loss. Absolutely, Your Honors. All right. I look at 4.04, 4.40, sorry. And the penultimate sentence in that regulation, look at it with me and see if you can explain it better. Weakness is as important as limitation of motion, i.e., functional loss. And a part which becomes painful on use, no functional loss mentioned, and a part which becomes painful on use must be regarded as seriously disabled. What are they saying in that sentence? Well, first off, Your Honor, we do believe the discussion of weakness by Mr. Thompson is a red herring. His only argument before the Veterans Court I'm not worried about his argument. I'm asking you, explain to me what that sentence is talking about. Sure. That sentence, it could be more artfully worded, Your Honor, absolutely. But that sentence is recognizing right there that weakness is a type of functional loss. An individual can receive compensation. What do you mean it could be more artfully? Well, there's a comma right there. We're looking at section 4.40. Excuse me? We're looking at the language itself. Yes, Your Honor. And there is a comma there, it's two different ideas we believe there. Are you saying it could have been drafted differently? Maybe two different sentences. To suit your argument? I'm sorry, Your Honor? Are you saying it could have been drafted differently to suit your argument? No, Your Honor, absolutely not. What I'm just trying to describe here. Deal with the language that's there. Oh, absolutely. I'm not going to rewrite this sentence at all, Your Honor. Deal with the language. Yes. A weakness is as important as limitation of motion. All right. Right there, that is saying that weakness could be a type of functional loss. And let me provide. Is it saying also that weakness could be distinct from loss of motion? Weakness could cause loss of motion. Doesn't that mean that weakness is an element that's distinct from loss of motion? From actual loss of motion, yes. Okay. And the reason why, I can provide an example. You agree with that proposition. Correct. That weakness is distinct from loss of motion. Weakness can cause loss of motion, though, but it's distinct from actual physical inability to move, yes. That's not the question. The question is, for analytical purposes, that's what we're engaged in as an appellate court. Is weakness distinctive from loss of motion? Your Honor, the problem I'm having with your statement is loss of motion. I'm talking about actual loss of motion, inability to move. If that's the question you're asking, then the answer is yes. Weakness is distinct from actual loss of motion. Is weakness distinct from 20% loss of motion? If that's actual loss in 20%, yes, Your Honor. If you have weakness that is brought on by pain, is that distinct from loss of motion? Can that be distinct from loss of motion? Well, if weakness brought on by pain, Your Honor, yes. If the individual is still moving, yes. Absolutely. And, Your Honor, let me explain to you what the purpose of 440 serves here. Because we do have a diagnostic code in 471A, and for the purposes of Mr. Thompson, not all injuries in the musculoskeletal system, just Mr. Thompson's spine injury, the diagnostic coding does have ratings based upon limitation of motion. What happened to Mr. Thompson is he came in to be tested, and he did the forward flexion test, which is simply bending forward at the waist, and he was only able to reach 65 degrees. 90 degrees would be a full range of motion. That entitles him to a 10% disability. However, the examiner requests that Mr. Thompson continue and do repetitive motions. On a further attempt, Mr. Thompson was only able to get to 50%, which is worse, and would entitle him to a 20% disability rating. Under a strict interpretation of 471A, which says that one receives a rating with or without pain, Mr. Thompson should have walked away with a 10% rating that day because he was able to reach 65%. However, he was rated at 20%. That is the conceded additional functional loss. Mr. Thompson could reach 65 degrees. But that's under 471A. It is not under 471A. Under 471A, an individual could only get the 65 degree rating because it says with or without pain, Your Honor. And this is something that is explicitly in the regulation, that it's saying that one must do this test regardless of pain. If he could go to 90 and be in excruciating pain, then what? If he could go to 90 and be in excruciating pain, if that pain prevents him from using his back, from functionally moving, he says, I can do this motion, examiner, but it's going to hurt me and I'm not going to do it. That could be considered functional loss. That's when 440 kicks in. Isn't that what was going on here? Exactly, Your Honor. 440 did help Mr. Thompson already. That's what the board, when circling back to my original statement here, this is what the holding of the Veterans Court was. Simply that the board did not err in finding that the conceded additional functional loss, which is the change from 65 degrees to 50 degrees, did not require additional rating. And the reason why, Your Honor, is that change, that from 65 to 50, would have entitled him to a 20% disability rating, which is what he received for 2008 to 2011, the time period that we're discussing today. So this is something that Mr. Thompson is skipping over in his briefing. He has received disability rating based upon functional loss of his spine. So would you agree with Mr. Russell's interpretation of 4.40? That you're saying that, okay, I agree with that, but the VA took care of it. Yes, Your Honor. I do agree that 440 applies to Mr. Thompson. Our concern with Mr. Thompson's briefing and his argument today is that pain itself constitutes functional loss for 471A in this situation. However, the rating system is very clear for Mr. Thompson's spine injury. It must limit range of motion, whether that's functionally or actually, as we discussed earlier, Your Honor. We can take a look at a Fenderson case. And by the way, we do not advocate a different standard coming from Fenderson. We just believe that Fenderson is a good example of how 440 applies to 471A. Why don't you see the difference between an actual loss of motion versus a functional loss of motion? Sure. Actual loss of motion, we can look at Mr. Fenderson. Mr. Fenderson. First, would you agree that actual loss falls under the diagnostic codes, functional loss falls under 4.40? Correct. Yes, absolutely. So if we look at Mr. Fenderson, we can look at Mr. Fenderson, and then we can look at Mr. Thompson under this example, Your Honor. Mr. Fenderson had plantar fasciitis, which is an injury on the bottom of the foot. Now, he could walk. He could run. He could play basketball. However, the problem, as the Veterans Court pointed out, was that he was limited in the time that he could do that, 10 minutes, 15 minutes, and then the pain would become too much. Now, at that point, is Mr. Fenderson actually limited from walking, running, playing basketball? No. Does he have a potential functional loss? Potentially, yes. That's why the Veterans Court remanded in that situation. Mr. Thompson, did he have actual physical movement loss? Yes. He could only reach 65 degrees when he bent forward. Did he also have functional loss? Yes. After repeated tries, he could only reach 50 degrees. That's a 15-degree difference. Because of the pain? Presumably because of the pain, yes. Whether it's pain, weakness, or some other type of causal or functional loss, it doesn't really matter if he did have functional loss. What did that entitle him to? An additional 20% under his diagnostic code. So, in that situation, both Mr. Thompson and both Mr. Fenderson had potential functional loss. Well, actually, Mr. Thompson had conceded functional loss, and Mr. Fenderson was remanded to determine whether that functional loss would go in there, Your Honor. Mr. Thompson argues that the Boris interpretation of 40-40 would eviscerate it, and no one would receive any benefits under it. Well, Mr. Thompson, as I've explained today, did receive benefits under 440. Moreover, the Veterans Court does not interpret 440 to have a strict loss of motion requirement. First off, it's only looking at 440 in the context of these specific diagnostic codes in 471A that discuss limitation of range. We cite the DeLuca case. Mr. Thompson cites the DeLuca case. That case shows that when you're looking at 440 and determining what functional loss there is, one should express it in the rating system for that particular diagnostic code. Well, let me tell you what's troubling about this. It can't be that the VA intended to say that if a Veteran is in constant excruciating pain, directly traceable to the service, that don't bother us. And is your view that the reason that it's written the way it is, is as a way of measuring the amount of compensation for pain? Let's say that the Veteran can function and is in constant pain. I don't think the intention has to be that, you know, go away until you can't lift your head anymore. No, you know, the musculoskeletal system, Your Honor, is a large group of diagnostic codes. So, for instance, looking at Mr. Fenderson's code, where there is no actual limitation of motion requirements, in that situation, Mr. Fenderson's, if he had excruciating foot pain, certainly 440 could apply in there and change the rating. The diagnostic codes we have before us today, and it's a very limited question before the court, discusses ratings in terms of limitation on motion. So, the functional loss has to affect motion when we're talking about the spine. Now, is a Veteran out of luck when they're out of pain, but they tough through it and move anyway, in your example, Your Honor? No, out of pain, but in pain. If they're in excruciating pain and we believe that it prevents them from moving, under our interpretation, or the Veteran's court interpretation, functional loss would occur and that Veteran would get rating under the DC, that issue today. If this Veteran was under excruciating pain in their back, but could move the full 90 degrees and still move that full 90 degrees, you know, it didn't actually prevent him from doing anything. Is that Veteran out of luck? No, because that Veteran can seek an extra scheduler rating, which Mr. Thompson did, and it was denied and he has not appealed that. Perhaps it's affecting the Veteran's ability to work. So, the Veteran can actually seek a rating based upon inability to work and be unemployed, a TDIU claim, which Mr. Thompson did seek. And although it's not in the record, we understand that he received a TDIU starting in 2011, a period after what we're discussing today.  The question of whether pain itself constitutes a disability is not before this court. That is not what Mr. Thompson's been arguing. Rather, he's been arguing that the Veteran's court has misinterpreted 440 as applied to these diagnostic codes. Well, I see why you think 440 is inartfully written, because it doesn't say what you say it does. Now, what you say it does may be a perfectly sensible method for evaluating disability, but let me put the question specifically to the hypothetical you just gave us. Let's say the Veteran has back injury, service-connected back injury. He bends over to 45 degrees and says, I can't go any further without real pain. They look at a hypothetical diagnostic code and say, okay, that entitles you to 20%, or whatever, X percent. Then they say to him, can you go to 90 degrees? And he says, only with intense pain. Show us. He goes to 90 degrees, but he's in great pain. They actually give him a shot to reduce the pain so he can do this. 440 seems to say that he's entitled to that 90-degree disability because of his pain. Your Honor, the numbers are backwards. Just to be clear, when you get down to 90 degrees, that's perfect. You've beaten the test, and you're fine. I just want to make sure. Well, that's my point. He can comply as if he has full flexion. Correct. Get to 90 degrees, but only with excruciating pain. Correct. They have to give him a shot in order to reduce his pain so he can demonstrate that he still is able to get to 90 in terms of the actual function of his spine. Correct. But he says, I can only get there with such pain that I never go there. Right. I think 440 would help our individual out in this situation, Your Honor. You think 440 would help him? Correct. Absolutely. Just as it helps Mr. Thompson. I'll explain why, and then I'll compare it to Mr. Thompson's situation. 471A, which is the diagnostic code for the flexion, bending forward, discusses that with or without symptoms such as pain, stiffness, or aching in the area of the spine affected by residuals of injury or disease. And then it goes on to discuss the flexion test. And saying if you can reach a certain degree, then you get this rating, a certain degree, you get that rating. If the individual could move to 90 degrees under 471A, with or without pain, they're entitled to zero rating. Right. They walk away without any disability rating. That's exactly right. This is why 440 was written. What 440 gives this individual is from 45 degrees in your example to 90, that individual was in excruciating pain, and he's functionally limited from making that motion. That's a functional loss right there under 440. And that individual with 45 degrees, Your Honor, would walk away with a 20% rating under 471A. But if 440 didn't exist, they would have gotten nothing. Now let's talk about Mr. Thompson. And I apologize, I'm over here, so I'll just finish this example, and if Your Honor has any further questions. Mr. Thompson could reach 65 degrees. Okay. So under 471A, with or without pain, he would be entitled to only 10%. The examiner asked him to take the test again and to do it again. After repetitive motions, he could only reach 50 degrees, which is worse. This is where he was rated. He was rated at 20%. Under 471A, he should have gotten 65 degrees and 10%. But 440 applied to give him 20% to actually rate him there. So that is the conceded additional functional loss, and that is the holding of the Veterans Court. But the Board did not err when looking at that conceded additional functional loss and affirming Mr. Thompson's 20% disability rating, not the 10% that he would have gotten under 65. Thank you, Your Honor. Thank you, Mr. Grimaldi. Okay. Just a couple points. What's wrong with his interpretation of 440? There's several things wrong. First of all, Mr. Thompson did not benefit from Section 440. This idea that he got the 20% rating because of his repetitive motion, there's no evidence of that. The 20% rating, he would have been independently eligible for that based on his combined motion of being 120 degrees or less. We made that point on page 7 of our blue brief. His 20% rating, he was already entitled to that based on his combined motion of his spine, which is a combined forward, back, left, right type of combination being less than 120 degrees. There's no evidence that his rating was based in any way on Section 4.40. The problem with their interpretation of Section 4.40 is that they're still tying it to a requirement that there be some loss of motion, and there's nothing in Section 440 that requires pain to also cause loss of motion. In fact, in Fenderson, we go back to Fenderson, there was no evidence of a loss of a range of motion. The only evidence was that he was functionally precluded from doing certain daily activities. We have the same evidence in our record. I went through all the different things where Mr. Thompson is severely impacted in his daily life, including things like bathing and toileting, far in excess of what the situation was in Fenderson. And yet in this case, the Veterans Court didn't even look at that evidence because the court only looked at his range of motion. And 4.40 is not based on range of motion alone. There's five different bases, one of which is painful motion. And that alone can entitle, should entitle Mr. Thompson to the higher rating. The only other thing that I'd like to point out is the VA says that the holding is very narrow, and he cited to a particular sentence on page 813. But there's other sentences on page 813 that are not narrow at all. The court goes on to say, about midway through the page, in other words, because the additional functional loss due to pain is not severe enough to limit Mr. Thompson's forward flexion to 30 degrees or less, it does not warrant a 40 percent disability rating, period. That's the analysis. That's the sum total of the court's analysis. It is very clearly equating, it's basically placing a litmus test on all claims for functional loss and saying, you have to meet the range of motion limitation in the rating schedule or you're not entitled to a higher rating, period. That's a very broad holding, and it contradicts many previous cases, including DeLuca and many other cases that we cited. Well, if he can reach the functional loss percentage in the rating code based on the fact that he has pain that's limiting him to get there, but he can prove that that's what's limiting him, wouldn't he get 440? Well, he should get 440 if he can show the three things that are required, which are pain, adequate pathologies corroborating the pain, and visible evidence of pain. And none of that requires a showing of any type of limitation of motion, functional or otherwise. But to be clear, the court's decision here didn't have anything to do with functional limitations on motion. The word functional is not in there. It was based on his actual limitation of motion. And because he didn't have an actual limitation of motion that met the rating schedule, the court didn't look at the rest of this evidence, which I went through earlier today. Any other questions? No, sir. Okay. Thank you. Thank you both. The case is taken under submission. That concludes the argued cases for this morning. All rise. The honorable court is adjourned until tomorrow morning. It's at o'clock a.m.